## SHIPE v. CONSUMERS' SERVICE CO.

### FLYNN v. SCHINDLER.

#### No. 4272.

Circuit Court of Appeals, Seventh Circuit.

June 4, 1930.

Walter R. Arnold, of South Bend, Ind., for appellant.

Dan Pyle, of South Bend, Ind., for appellee.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The facts as stated in Tudor v. Schindler (C. C. A.) 29 F.(2d) on pages 321 and 322, are likewise here relevant, and without re-

statement reference to them is made. Further facts bearing upon the instant case are:

After Fogarty had paid $4,200 upon the 10 per cent. required to be put up on his bid of $155,250, some months elapsed, when one Henry Smith appeared with an assignment of Fogarty's bid and paid the additional sum of $10,000 thereon. December 20, 1927, the receiver filed a petition setting forth that Fogarty and Smith had not complied with the bid, and that they be required to show cause why the property should not be resold. Fogarty and Smith waived service of notice and consented that the petition be heard November 5, 1927, or such date as the court might fix; whereupon the court ordered that the receiver resell the assets. The sale was duly advertised, and was postponed from time to time until March 2, 1928. On February 2, 1928, appellant, Flynn, sent the receiver this telegram:

"I will honor and pay five day draft in amount Five Thousand Dollars drawn on me at Continental National Bank Chicago provided you continue option of purchase now held by Henry Smith for thirty days from this date. Thos. Flynn."

On the same day the receiver wrote Flynn as follows:

"Since my talk with you over the telephone yesterday, I have arranged an extension of time for Henry Smith to complete his purchase of the assets of the Consumers Service Company for Thirty (30) days to March 2, 1928, on condition that the $5000 be paid and that Mr. Smith give me some further security which I understand he is arranging to do now.

"Complying with your request, I have drawn on you at five (5) days sight, for the amount of $5000 and have placed the draft with the First National Bank of Mishawaka, Indiana, for forwarding to the Continental Bank of Chicago.

"I trust it will be convenient for you to take up this draft within the time indicated and that through your efforts, and those of Mr. Smith, you will be able to complete the purchase within the time indicated.

"I want you to feel free to call on me at any time for any information which you might desire with reference to this property or to the sale of the same and assure you that I will be glad to do all within my power to complete the sale according to the terms on which the same was made."

The receiver drew on Flynn for $5,000, the draft being duly honored.

On March 2, 1928, Tudor bid $132,000, which the receiver tentatively accepted subject to confirmation by the court. On March 12, 1928, Frost agreed with the receiver that he would pay $155,250, and the receiver agreed to resell the property if Tudor's bid were rejected.

March 21, 1928, the court, in the presence of Fogarty and Smith, announced that unless Frost or some other person shall then bid $155,250 for the property the sale to Tudor would be approved. The property was then sold to Frost on his bid of that amount, and the sale was approved. Flynn says that, to the knowledge of the receiver, he (Flynn) had a 25 per cent. interest in the Frost bid. The $5,000 was not returned to Flynn, and his petition for its return was denied by the court. The appeal challenges this ruling of the court.

We must look to the situation as it then was in order to reach an understanding as to what Flynn's telegram and Schindler's letter in reply really mean. While the telegram mentions continuation of Smith's option of purchase thirty days from date of the telegram, it does not appear that at that time Smith had an option. Some months before the telegram an order for resale had been made, on the receiver's petition, based on Fogarty's noncompliance with his bid. Whatever Flynn's purpose may have been, whether to make good on the Fogarty bid, or to arrange for another bid, it is evident from the record that he desired time in which to make financial arrangements for procuring the property, and that the main thing he then wished to achieve was the extension of time. For this it appears he evidently was willing to pay to the receiver for the benefit of the estate the sum of $5,000.

The conduct of the business by the receiver was a heavily losing venture, and any considerable postponement undoubtedly meant greater loss to the estate. This was a situation of which all interested unquestionably had knowledge. The telegram did not indicate that the $5,000 should be applied on any bid in case the interest represented by Flynn was the successful bidder. In our judgment the fair inference from this critical situation is that Flynn was willing to pay $5,000 in order that he might be given the opportunity, either by himself or with others, to make some arrangement whereby he might undertake to acquire the property, or some interest in it, and in the meantime assure the receiver against further loss, which seemed inevitable if the sale was postponed. The proposition was large, involving the acquirement of these many filling stations, and Flynn evidently concluded that unless there was a postponement of the sale he would have no chance to get the property, and that the chance of getting it through the postponement was worth to him the amount which he proposed in his telegram to pay. He had the benefit of this delay, and achieved his evident purpose, in that six weeks later the court accepted Frost's bid wherein Flynn had an interest.

We think Flynn had all the benefit and consideration that he sought and contracted for from the $5,000 payment, and that, in the very peculiar situation here presented, he has no equitable claim for its return.

The order of the District Court dismissing his claim is affirmed.